**Dorothy ISSNER, Plaintiff,**

v.

**Hulbert S. ALDRICH et al., Defendants.**

**Civ. A. No. 2757.**

United States District Court
D. Delaware.

May 18, 1966.

**698**

Irving Morris, of Cohen, Morris & Rosenthal, Wilmington, Del., Bennett Frankel and Israel Beckhardt, New York City, for plaintiff.

Robert H. Richards, Jr., of Richards, Layton & Finger, Wilmington, Del., Gerald R. Redding of Baker & Daniels, Indianapolis, Ind., and Arthur Rosett, of Patterson, Belknap & Webb, New York City, for Panhandle Eastern Pipe Line Co.

Howard L. Williams, of Morris, James, Hitchens & Williams, Wilmington, Del., for National Helium Corporation.

John P. Sinclair, of Berl, Potter & Anderson, Wilmington, Del., Edward J. Ross and Stephen R. Lang of Breed, Abbott & Morgan, New York City, for National Distillers and Chemical Corporation.

CALEB M. WRIGHT, Chief Judge.

Plaintiff, a shareholder of National Distillers & Chemical Corporation (Distillers), a Virginia corporation, brought this derivative action against Panhandle Eastern Pipe Line Company (Panhandle), National Helium Corporation (National Helium) and each member of its board of directors, and Distillers and each member of its board of directors for wrongs allegedly committed by Panhandle against Distillers and National Helium.

The original complaint was dismissed with leave to amend for failure to comply with Rule 23(b) of the Federal Rules of Civil Procedure in that the complaint failed to set forth (1) that demand had been made on Distillers board of directors to bring the action, and (2) that demand had been made on shareholders of Distillers or in lieu of such allegation, the reasons for failure to make such demand. Subsequently, after making demand on Distillers board of directors and their refusal to sue, plaintiff filed this amended complaint.

In substance, the amended complaint alleges that Panhandle and Distillers formed a jointly owned subsidiary (National Helium), to extract helium from natural gas produced by Panhandle. Each company owned 50% of the stock of National Helium and contributed equally to the capital investment in National Helium. Allegedly Panhandle conceived of a plan and imposed it upon National Helium for the purposes of minimizing its risk, shifting all the business risks to National Helium, obtaining for itself improper profits at the expense of National Helium, and dealing with National Helium with primary regard to Panhandle's own business requirements while disregarding the interests of National Helium. Allegedly the means to accomplish this plan was through a long term contract entered into between Panhandle and National Helium, the specifics of which need not be stated at this time.

Paragraph 5 of the amended complaint contains the allegations on which plain-

tiff relies to show that Panhandle controlled Distillers so as to impose this allegedly one sided contract on National Helium. It provides:

"5 (a) At all the times hereinafter mentioned, Panhandle has owned in excess of 12% of the outstanding common shares of Distillers, which is by far the largest block of such stock, the remainder being widely scattered among more than 74,000 shareholders. This block constitutes effective working control of Distillers by Panhandle.

(b) National Helium is controlled by Panhandle which has nominated and placed in office most of the officers and a majority of the directors of National Helium. Most of the officers and a majority of the directors of National Helium are officers and directors of Panhandle."

In paragraph 4 of the amended complaint, plaintiff states the specific names of the directors of Distillers. Of the 17 listed, 3 of them are alleged to be directors of Panhandle. Also alleged is that 4 out of the 7 directors of National Helium are either Panhandle officers or directors.

Defendants have moved to dismiss the complaint on the grounds that (1) plaintiff failed to allege that a demand was made on the shareholders of Distillers and the reasons given to excuse such demands are inadequate, and (2) plaintiff's allegations fall within the "business judgment" rule which is a bar to a stockholder's derivative action.

 The question concerning demand on shareholders need not be decided because the complaint's allegations do not state a cause of action. In order for a stockholder to sue on behalf of his corporation, he must allege that the directors have been guilty of some misconduct, otherwise the directors' decision not to sue falls within the "business judgment rule." Ash v. International Business Machines, Inc., 353 F.2d 491 (3 Cir. 1965). The decision not to sue is like other business judgments, ordinarily a matter of internal management. United

Copper Securities Co. v. Amalgamated Copper Co., 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 (1919).

 The rule has been clearly stated in Swanson v. Traer, 249 F.2d 854, 858 (7 Cir. 1957):

"* * * if a board of directors, a majority of which are admittedly honest and have not been involved in the alleged wrongs, refuses a demand to bring suit, then the complaining shareholder's judgment shall not be substituted for that of the directors. In those circumstances, mismanagement of the corporation is not shown. * * * *"

 The Third Circuit has recently reaffirmed this rule in Ash v. International Business Machines, Inc., 353 F.2d 491, 493 (3 Cir. 1965). It said:

"The Supreme Court and, following it, the Courts of Appeals have repeatedly stated and applied the doctrine that a stockholder's derivative action, whether involving corporate refusal to bring antitrust suits or some other controversial decision concerning the conduct of corporate affairs, can be maintained only if the stockholders shall allege and prove that the directors of the corporation are personally involved or interested in the alleged wrongdoing in a way calculated to impair their exercise of business judgment on behalf of the corporation, or that their refusal to sue reflects bad faith or breach of trust in some other way. (citing cases) * * * Prevailing doctrine in the state courts is to the same effect. See 13 Fletcher, Cyclopedia of the Law of Private Corporations § 5822.

"One of the frequently quoted statements of this doctrine is that of Mr. Justice Brandeis, concurring in Ashwander v. T.V.A., 1936, 297 U.S. 288, 343, 56 S.Ct. 466, 481, 80 L.Ed. 688: '[Stockholders] cannot secure the aid of a court to correct what appear to them to be mistakes of judgment on the part of the officers. * * * This rule applies whether the mistake is due to error of fact or of law, or merely

to bad business judgment. It applies * * * where the mistake alleged is the refusal to assert a seemingly clear cause of action * * *.'

"Also meriting particular mention because of its direct applicability here is the holding of the Court in United Copper Securities Co. v. Amalgamated Copper Co., supra, that a stockholder's complaint seeking to assert derivatively his corporation's right to attack a competitor's violation of the antitrust laws is fatally defective in failing to allege that the injured corporation 'is in the control of the alleged wrongdoers, or that its directors stand in any relations to them, or that they have been guilty of any misconduct whatsoever'. 244 U.S. at 264, 37 S.Ct. at 510.

"A few decisions suggest that factors other and less compelling than bad faith or bias may, in the view of a court exercising this equitable jurisdiction, suffice to disqualify directors from representing the corporate interest and thus make it permissible that a minority stockholder sue for the corporation. (citing cases) * * * But, even if there may be disqualifying circumstances other than bad faith or bias, no suggestion of any such circumstance appears in this case. * * *"

This rule rests on the theory that the board of directors had been elected to make the business judgments for the corporation. These judgments should not be usurped by an individual shareholder or the courts unless the board of directors has not exercised its judgment in good faith. Thus, if directors are dominated and controlled by interests which are at conflict with the best interests of the corporation, such as helping themselves financially at the expense of the corporation, the courts, at the instigation of a

shareholder, are justified in setting aside the decision.

This general rule is also the law of Virginia,[1] Virginia Passenger & Power Co. v. Fisher, 104 Va. 121, 51 S.E. 198 (1905), where Distillers is incorporated. Preliminarily, it should be noted that this is a "double derivative suit." Plaintiff is a stockholder of Distillers and unless she can discredit the action of Distillers' board, it makes little difference what National Helium's directors did. Distillers, being the stockholder of National Helium, is the proper person to sue if National Helium's board acts fraudulently. Only if the allegations concerning the acts of both Distillers' and National Helium's boards of directors are sufficient to discredit both boards does a stockholder of Distillers state a valid claim.

Moreover, Distillers board has acted twice, once in entering into the contracts with Panhandle to set up National Helium, and secondly, when Distillers board of directors refused to sue. As to the first decision, plaintiff must allege that the business judgment of the board was impaired either by misconduct of the board or that the board itself was defrauded in some manner, i. e., the corporation has a cause of action which was unknown to its directors. However, once this cause of action was communicated to Distillers board and the decision not to sue is made, plaintiff must allege some misconduct or bad faith of the directors in the exercise of their judgment not to sue. United Copper Securities Co. v. Amalgamated Copper Co., 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 (1917). However, since the board of Distillers has not changed substantially between the two acts, if the allegations were sufficient to show misconduct in one situation, it would cover both of them.

1. Under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this court, in a diversity action, must follow the substantive law of the forum state including its conflict rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Delaware's conflict rules look to the state of incorporation, i. e., Virginia, to determine intracorporate matters. Zahn v. Transamerica Corp., 162 F.2d 36, 172 A.L.R. 495 (3 Cir. 1947).

Assuming to be true, as this court must when a complaint is being tested by a motion to dismiss, that the contract between National Helium and Panhandle is unfair to National Helium, that National Helium's board of directors is dominated by Panhandle (4 out of 7 of its directors are connected with Panhandle), the only point at issue is whether the allegations concerning the control of National Distillers board of directors is sufficient in law. It must be remembered that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." F.R.Civ.P. 9(b).

By implication, plaintiff admits that only 3 out of 17 directors of Distillers have any direct connection with Panhandle. As to Distillers 14 other directors, the complaint does not allege that they have any specific connection with Panhandle, that they are guilty of any particular wrongdoing, or that they have an improper self interest or have obtained an improper profit by these transactions. Instead, plaintiff's entire complaint hinges on the conclusory allegation:

"This block constitutes effective working control of Distillers by Panhandle."

Nowhere is it alleged how Panhandle's 12% stock ownership, which so far has only been able to elect 3 out of 17 directors, is in control of Distillers board of directors. Possibly plaintiff is contending that the 12% stock ownership is a threat to the 14 independent directors tenure in their positions as directors; thus in fear of being ousted by Panhandle, the directors have allowed Panhandle to impose its will on them. However, this theory has not been stated and, furthermore, these 14 members of the board have control of the financial resources and proxy machinery of Distillers with which to resist any pressure by Panhandle. This may be the reason the theory of a threat was not expressed.

Plaintiff's main reliance is on the italicized quote from Swanson v. Traer, supra, 249 F.2d at 858:

"If the directors who constitute a majority of the board and who reject the demand are dishonest, guilty of a breach of trust, *were participants in the fraudulent acts relied upon by the stockholder as a basis for the legal action which he demands, or are subject to the control of the alleged wrongdoers,* then equitable jurisdiction may be invoked and he may proceed to file the suit himself." (Emphasis supplied.)

Unquestionably, Distillers' directors entered into an arrangement with Panhandle to establish National Helium and also permitted Panhandle to place 4 of its personnel on National Helium's board of directors while Distillers had only 3 representatives on it. However, this does not make Distillers' 14 directors participants in any fraudulent acts.

One theory could be that Panhandle was in a better bargaining position than Distillers since it had access to the necessary raw material (the natural gas) for the operation. Thus, Distillers board of directors was in the weaker bargaining position than Panhandle and had to make some concessions to Panhandle. This construction of plaintiff's allegations is consistent with Distillers' board of directors exercising its sound business judgment. Plaintiff has not alleged anything which would, if proven, establish a case which falls outside the above construction of the facts, therefore, the business judgment rule would preclude any recovery.

Plaintiff in her brief seems to argue that a fraud was perpetrated on Distillers board, not that they attempted to perpetrate it. Plaintiff asserts:

"Whether controlled by Panhandle or not the National Distillers directors in this state of facts are either creatures or dupes of Panhandle permitting this intriguing three sided raid on National Distiller's treasury." (Plaintiff's Brief, p. 9)

However, the complaint does not allege that the directors were negligent or

incompetent, consequently this theory is irrelevant.

In any case, when plaintiff asserted to the board of directors her version of the facts, the board of directors rejected it. This, in itself, is the exercise of an independent business judgment by Distillers not to sue. United Copper Securities Co. v. Amalgamated Copper Co., supra. There must be some allegation to impugn this act of Distillers board of directors. Plaintiff does not assert how, where, when, or in what manner, Distillers board acted fraudulently in denying her suggestion to sue.

Plaintiff has failed to allege with any particularity the means by which Distillers board of directors is controlled by Panhandle. The bland assertion of 12% stock ownership of Distillers stock by Panhandle is not sufficient.

The complaint will be dismissed.

Submit order.