Ida ABRAMOWITZ, derivatively as a shareholder of NVF Company, a Delaware Corporation, Plaintiff-Appellant,

v.

Victor POSNER, Bernard Krakower, Steven Posner, Walter E. Gregg, Gail Posner Cohen and NVF Company, Defendants-Appellees.

No. 250, Docket 81–7320.

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1981.

Decided Feb. 9, 1982.

Peter S. Pearlman, Saddle Brook, N. J. (Jeffrey W. Herrmann, Cohn & Lifland, Saddle Brook, N. J., of counsel), for plaintiff-appellant.

William R. Glendon, New York City (Guy C. Quinlan, Richard A. Cirillo, Rogers & Wells, New York City, of counsel), for defendants-appellees.

Paul Gonson, Sol., Ralph C. Ferrara, Gen. Counsel, Jacob H. Stillman, Associate Gen. Counsel, Richard A. Kirby, Sp. Counsel, Anne H. Sullivan, Robert Mills, Securities and Exchange Commission, Washington D. C., of counsel, for the S.E.C. as amicus curiae.

Before MESKILL and KEARSE, Circuit Judges, and METZNER,* District Judge.

MESKILL, Circuit Judge:

In *Burks v. Lasker*, 441 U.S. 471, 480, 99 S.Ct. 1831, 1838, 60 L.Ed.2d 404 (1979), the Supreme Court held that the authority of disinterested directors to terminate shareholder derivative litigation is governed by applicable state law, provided that such law is consistent with the policies of the federal acts upon which the action is based.[1] Our present task is to determine whether the district court properly dismissed appellant Ida Abramowitz's derivative suit after the corporation, by unanimous vote of its disinterested directors, declined to sue on its own behalf. We hold that the district court decision comports with Delaware law as recently set forth in *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del.1981), that Delaware law does not offend relevant federal policy, and that the district court's findings are supported in the record. Accordingly, we affirm.

---

* Honorable Charles M. Metzner, United States District Judge for the Southern District of New York, sitting by designation.

1. *Burks v. Lasker* was brought under the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 *et seq.* (1976), and the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b–1 *et seq.* (1976). Nevertheless, its two-prong analysis has been widely applied where disinterested directors seek to terminate shareholder derivative suits which assert violations of federal statutes. We view *Burks* as controlling in this case, which involves, *inter alia*, a cause of action based upon section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976). *See Lewis v. Anderson*, 615 F.2d 778 (9th Cir. 1979), *cert. denied*, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980).

## BACKGROUND

We assume familiarity with the underlying facts, which are discussed at length in the district court's opinion, *Abramowitz v. Posner*, 513 F.Supp. 120 (S.D.N.Y.1981). We repeat only those facts necessary for an understanding of the issues raised on this appeal.

At the time this action was commenced, the individual defendants were five of the seventeen directors of NVF Company (NVF), a Delaware corporation listed on the New York Stock Exchange.[2] These five individuals were among the defendants named by the Securities and Exchange Commission (SEC) in a civil action alleging that corporate perquisites had been abused. *SEC v. Sharon Steel Corp.*, No. 77–1631 (D.D.C. filed September 20, 1977).[3] The SEC obtained a consent decree in which the defendants agreed to entry of a final judgment which granted permanent injunctive and other ancillary relief. The judgment, entered September 20, 1977, called for the Posner defendants to repay $600,000 to NVF and other companies in which they held controlling interests, and required NVF to create a three-member Audit Committee with responsibilities, set forth in part in Paragraph VIII of the judgment:

(e) to examine the matters alleged in the Commission's Complaint, and such other similar matters as each Audit Committee may deem appropriate, in order to recommend whether, in the best interests of the corporation, any action should be undertaken against any person, including the institution of any action permitted by Paragraph VI hereof, and to make recommendations with respect thereto to the Board of Directors of the respective corporations; provided that no person who is a subject of any such recommendation by an Audit Committee who serves on the Board of Directors of any such corporation shall vote upon any such recommendation; (f) within 120 days from the appointment of the Audit Committee, or such additional time as the Commission may reasonably agree, to submit to the Board of Directors and to file with the Commission in the public files of the corporation, a report or reports of its findings and recommendations pursuant to Subparagraphs (a) through (e) above, including a description of the scope of their investigation.

Two members of the Committee, James J. Needham, a former member of the SEC and a former Chairman and Chief Executive Officer of the New York Stock Exchange, and Mark A. White, Esq., a former Vice President and General Counsel of the National Association of Securities Dealers, were also appointed independent directors of NVF with the SEC's approval. The Committee's third member, Armer E. White, had been an outside director of NVF and was not a defendant in either the SEC action or the present litigation.

The Audit Committee, with the assistance of the Washington law firm of Arnold & Porter and the national accounting firms of Price Waterhouse & Co. and Arthur Anderson & Company, immediately began investigating improprieties in NVF's management.[4] Meanwhile, several NVF shareholders, including Abramowitz, brought separate but related suits based on substantially the same matters addressed by the SEC action.[5] Abramowitz based her complaint

---

**2.** Defendant Victor Posner, currently the Chairman and Chief Executive Officer of NVF, is the father of defendants Steven Posner and Gail Posner Cohen. These parties are referred to herein as "the Posner defendants." Defendants Walter Gregg and Gail Posner Cohen are no longer officers or directors of NVF.

**3.** The defendants in the SEC action also included DWG Corporation and Pennsylvania Engineering Corporation, companies affiliated with NVF, Sharon Steel Corporation, a subsidiary of NVF, Fingol Bloom, and Guy McKracken.

**4.** The investigation was actually conducted jointly by the separate audit committees of NVF, Southeastern Public Service Co., Wilson Brothers, Sharon Steel Corp., DWG Corp., and Pennsylvania Engineering Corp., which are affiliated companies. We refer to this group as the "Audit Committee" for convenience.

**5.** In all, five suits were commenced, four in the United States District Court for the Southern District of New York. The present action by Abramowitz was initially filed in the United States District Court for the District of New

on theories of common law waste, conversion, and fraud, alleging that the defendants had damaged NVF through their abuses and misappropriations of corporate assets. The complaint also asserted that defendants had violated section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (1976) (the Act), and Rule 10b–5 promulgated thereunder, by making misleading disclosures in connection with transfers of stock from NVF to the defendants.

Abramowitz had never made a demand on the NVF Board pursuant to Fed.R.Civ.P. 23.1 [6] because she felt that such an attempt would have been futile. *See Elfenbein v. Gulf & Western Industries, Inc.,* 590 F.2d 445, 450 (2d Cir. 1978). The court below disagreed, however, dismissing the complaint for failure to satisfy Rule 23.1, but giving Abramowitz leave to replead within sixty days.

By the time Abramowitz made her demand on NVF to sue the defendants in its own name, the Audit Committee had issued its findings and recommendations. The Committee recommended that the company seek repayment from the defendants of an additional $1,021,445 over the $600,000 already received pursuant to the SEC consent decree. The Committee found, however, that further legal action was not in the company's best interests as an initial strategy and should be pursued only in the event that the defendants refused to consent to the additional reimbursement. In conclusion, the Committee stated:

> the Audit Committees further believe that the corrective measures already being taken by the companies, and the policies, procedures and controls adopted by the Audit Committees, should prevent recurrence of these matters.

J. App. at 307.

The Committee's findings referred to the injunctive provisions of the final judgment entered in the SEC action and recognized the profitability and substantial growth in sales achieved by NVF and related companies during the period in which the defendants served as directors. While the Committee conceded that a greater sum than $1,021,445 might be recovered through court action, it concluded that the sum recommended was both "fair and equitable." *Id.* at 328.

The Committee's report was unanimously accepted by the NVF board and was filed publicly with the SEC, which made no objection to the recommendations. Subsequently, full reimbursement was made in accordance with the report. On July 31, 1979, the board of NVF, including the two independent directors appointed with the approval of the SEC, unanimously rejected Abramowitz's demand for further proceedings against the defendants as not in NVF's or its shareholders' best interests. The individual defendants in this action did not vote on the matter.

On August 30, 1979, Abramowitz filed an amended complaint stating that "[n]o re-

---

Jersey but was transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

6. Fed.R.Civ.P. 23.1 provides:

 In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

sponse to this demand has been received from the Board of Directors and accordingly the plaintiff has no recourse but to initiate this action." Amended Complaint, ¶ 13. Shortly thereafter, Abramowitz received notice of NVF's rejection of her demand, but refused to withdraw the complaint. At that point, defendants moved to dismiss this action, arguing that "a determination by a board of directors in the exercise of its business judgment that proposed litigation is not in the corporation's best interests is conclusive and bars maintenance of a derivative action, absent a showing of bad faith not made here." 513 F.Supp. at 125. Abramowitz opposed the motion to dismiss, on the grounds that "relevant state law does not permit invocation of the business judgment rule in the manner put forward by defendants and that, even if state law gave the Board the authority to terminate a derivative action, condoning the exercise of that authority herein would be contrary to the policies underlying Section 10(b) of the Act and Rule 10b–5." *Id.*

District Judge Haight was forced to decide this case at a time when Delaware law was unclear on the application of the business judgment rule to termination of shareholder derivative suits. Several courts, including the Delaware Chancery, had addressed the issue of "whether [under Delaware law] the business judgment rule should be extended to permit noninterested members of the board of directors of the nominal corporation to dismiss a stockholder derivative suit brought against interested members of the board[,]" 513 F.Supp. at 125, with two courts answering in the affirmative, *see Abbey v. Control Data Corp.,* 603 F.2d 724, 729–30 (8th Cir. 1979), *cert. denied,* 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980); *Maldonado v. Flynn,* 485 F.Supp. 274, 278–81 (S.D.N.Y.1980), *rev'd,* 671 F.2d 729 at 730 (2d Cir. Feb. 9, 1982), and two answering in the negative, *see Maher v. Zapata Corp.,* 490 F.Supp. 348, 351–53 (S.D.Tex.1980); *Maldonado v. Flynn,* 413 A.2d 1251, 1257 (Del.Ch.1980), *rev'd, Zapata Corp. v. Maldonado,* 430 A.2d 779 (Del.1981).

Judge Haight, although cognizant of the Delaware Chancery opinion, concluded that the Delaware Supreme Court would be more likely to adopt the reasoning of the Eighth Circuit and of Judge Weinfeld of the Southern District of New York. Accordingly, Judge Haight held:

> I find, therefore, that Delaware law permits disinterested, independent members of the NVF Board to terminate a derivative suit alleging impropriety by other members of the board.

513 F.Supp. at 129. Further, Judge Haight concluded that to construe the business judgment rule in such a manner would not offend federal policies underlying section 10(b) of the Act and Rule 10b–5. *Id.* Finally, in applying the business judgment rule, Judge Haight concluded that the decision of the disinterested directors of NVF to forgo litigation was reached in good faith and that Abramowitz had produced no evidence to substantiate her allegation that the board members who rejected her demand were not independent:

> Plaintiff has sought no discovery with respect to the good faith and independence of the Board members and has introduced no evidentiary proof that would raise a factual question as to their *bona fides.* Her argument is based on no more than innuendo and the opinion "that it is asking too much of human nature to expect that disinterested directors will view with the necessary objectivity the actions of their colleagues in a situation where an adverse decision would be likely to result in considerable expense and liability for the individuals concerned." *Lasker v. Burks,* 567 F.2d 1208, 1212 (2d Cir. 1978), *rev'd,* 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979). The Supreme Court, on appeal, expressly disavowed the quotation relied on by plaintiff in the context of the Investment Company Act, 441 U.S. at 485 n.15, 99 S.Ct. at 1840 n.15, and I reject this jaundiced view of human nature in the instant case.

513 F.Supp. at 133–34.

## DISCUSSION

While the various courts addressing the issue now confronting us have been forced

to predict the views of the Delaware Supreme Court, we have the luxury of having that court's recent opinion in *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del.1981), which squarely sets forth the relevant Delaware law. Our simplified task, then, is to determine whether the district court's decision comports with Delaware law as enunciated in *Zapata*, and, if so, whether such a result is consistent with the policies underlying section 10(b) of the Act and Rule 10b–5. *See Burks v. Lasker*, 441 U.S. at 477–80, 99 S.Ct. at 1836–80.

## I

In *Zapata*, the Delaware Supreme Court was faced with a situation strikingly similar to that before us. The complaint alleged various breaches of fiduciary duty by the officers and/or directors of Zapata Corp., a Delaware corporation. However, unlike in the present case, the plaintiff in *Zapata* "did not first demand that the board bring [the] action, stating instead such demand's futility because all directors were named as defendants and allegedly participated in the acts specified." [7] 430 A.2d at 780.

Shortly thereafter, Zapata Corp. created an "Independent Investigation Committee" composed solely of two new directors to review the various suits brought to redress the alleged fiduciary breaches by Zapata's officers and directors.[8] The committee's conclusions were to be "final, ... not ... subject to review by the Board of Directors and ... in all respects ... binding upon the Corporation." 430 A.2d at 781. The committee, like the NVF Audit Committee, conducted a thorough investigation and concluded that further litigation would not be in the corporation's best interests. Subsequently, Zapata moved to dismiss the three pending derivative actions, or alternatively for summary judgment, contending that the good faith decision by the independent committee to forgo litigation merited protection under the business judgment rule.

The Delaware Supreme Court began by analyzing whether and in what manner Delaware law empowers a corporation to terminate shareholder derivative litigation. In doing so, the court distinguished between cases in which the corporation refused to instigate the litigation after a shareholder's demand, and those in which demand was not made due to futility. In the former case, the court stated quite clearly,

> Consistent with the purpose of requiring a demand, a board decision to cause a derivative suit to be dismissed as detrimental to the company, after demand has been made and refused, will be respected unless it was wrongful.... A claim of a wrongful decision not to sue is thus the first exception and the first context of dispute. Absent a wrongful refusal, the stockholder in such a situation simply lacks legal managerial power.

*Id.* at 784 (citations and footnote omitted). In a footnote, the court proceeded to explain:

> In other words, when stockholders, after making demand and having their suit rejected, attack the board's decision as improper, *the board's decision falls under the "business judgment rule"* and will be respected if the requirements of the rule are met.... That situation should be distinguished from the instant case, where demand was not made, and the *power* of the board to seek a dismissal, due to disqualification, presents a threshold issue.

*Id.* at 784 n.10 (first emphasis added). Thus, where a demand is made and refused, absent a showing of wrongful conduct by the voting directors, the stockholder is simply without the legal ability to initiate a derivative action. *Id.* at 784 & n.12.

---

**7.** Delaware Court of Chancery Rule 23.1 is identical in its demand requirement to Fed.R. Civ.P. 23.1 quoted at note 6, *supra*.

**8.** In all, three separate suits were commenced on behalf of Zapata Corp. In addition to the Delaware action, parallel suits were brought in the United States District Courts for the Southern District of New York, *Maldonado v. Flynn*, 485 F.Supp. 274 (S.D.N.Y.1980), *rev'd,* 671 F.2d 729 at 730 (2d Cir. Feb. 9, 1982), and for the Southern District of Texas, *Maher v. Zapata Corp.*, 490 F.Supp. 348 (S.D.Tex.1980).

The latter case, where demand has not been made due to futility, presented a more complex issue. The court recognized that were a corporation powerless to "rid itself of detrimental litigation[,] . . . a single stockholder in an extreme case might control the destiny of the entire corporation." *Id.* at 785. The court found that notwithstanding the absence of a demand, the corporation retained the power to make litigation decisions due to its "statutory managerial authority." *Id.* The issue in a futility case, the court declared, was how the board, "tainted by the self-interest of a majority of its members," could nevertheless exercise its statutory power to terminate derivative litigation. In this circumstance, due to the "sufficient risk in the realities of [the] situation[,]" *id.* at 787, the court was not content to rely on the business judgment rule to ensure that the corporation acted independently and in good faith in reaching its decision to forgo litigation. Instead, the court formulated a two-step test:

> First, the Court should inquire into the independence and good faith of the committee and the bases supporting its conclusions. Limited discovery may be ordered to facilitate such inquiries. The corporation should have the burden of proving independence, good faith and a reasonable investigation, rather than presuming independence, good faith and reasonableness. . . . If . . . the Court is satisfied . . . that the committee was independent and showed reasonable bases for good faith findings and recommendations, the Court may proceed, in its discretion, to the next step.

> The second step provides, we believe, the essential key in striking the balance between legitimate corporate claims as expressed in a derivative stockholder suit and a corporation's best interests as expressed by an independent investigating committee. The Court should determine, applying its own independent business judgment, whether the motion should be granted.

*Id.* at 788–89 (footnotes omitted).

■ In sum, whether and how Delaware law permits disinterested independent directors of a corporation to seek termination of derivative litigation brought to redress alleged impropriety by other directors depends upon the type of case. Where demand upon the corporation has been made and refused, a court will defer to the company's business judgment to forgo litigation unless the shareholder can show that the directors acted wrongfully. Where demand has not been made due to futility, however, the company bears the initial burden of establishing its good faith and independence in seeking termination, and even then, its judgment is subject to the court's objective scrutiny.

## II

Having set forth applicable state law, we turn now to the second prong of *Burks v. Lasker.* Abramowitz, citing no supporting case law, contends that to defer to the business judgment of NVF's disinterested directors in this case without closely and objectively scrutinizing their decision to forgo litigation would offend the policies underlying section 10(b) of the Act. Further, the SEC, despite its own 1977 settlement with the defendants and its acceptance of the NVF Audit Committee's Report, now argues as amicus that

> it is consistent with the federal policy of Section 10(b) of the Securities Exchange Act to permit the business judgment termination of a derivative suit charging violation of that antifraud provision only if the corporation establishes that:

> (a) the directors making the decision to terminate were independent and able to exercise unbiased judgment on behalf of the corporation and its shareholders;

> (b) the directors were fully informed of the facts relevant to their decision; and

> (c) that decision was reasonable under the circumstances.

Brief for SEC at 2.

■ We agree with the Ninth Circuit, *see Lewis v. Anderson*, 615 F.2d 778 (9th Cir. 1979), *cert. denied*, 449 U.S. 869, 101

S.Ct. 206, 66 L.Ed.2d 89 (1980), that the policies underlying section 10(b) are not offended by interpreting the business judgment rule to bar shareholder derivative litigation when a corporation's disinterested directors, independently and in good faith, determine that the action is not in the company's best interests. Private claims for relief under section 10(b) and Rule 10b–5 serve to supplement enforcement of the securities laws by the SEC.[9] *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730, 95 S.Ct. 1917, 1922, 44 L.Ed.2d 539 (1975). But certainly, the decision whether to pursue such a claim is within the discretion of the private plaintiff. The claim in a shareholder derivative action belongs to the corporation on whose behalf it is brought, not to those shareholders who commence the litigation. Therefore, the decision whether to litigate such a claim is for management to make. *See United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 263, 37 S.Ct. 509, 510, 61 L.Ed. 1119 (1917). Absent bad faith, we find no federal policy underlying section 10(b) which requires a court to second-guess the informed judgment of independent corporate directors. As the New York Court of Appeals stated in *Auerbach v. Bennett*, 47 N.Y.2d 619, 630, 393 N.E.2d 994, 1000, 419 N.Y.S.2d 920, 926 (1979):

> It appears to us that the business judgment doctrine, at least in part, is grounded in the prudent recognition that courts are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments.

In short, "[w]e see no threat to the purity of the securities market" in applying the business judgment rule to allow disinterested, independent directors to terminate derivative litigation. *Lewis v. Anderson*, 615 F.2d at 783–84.

We also observe that other courts have found this use of the business judgment rule consistent with the policies underlying analagous securities provisions. *See, e.g., Abbey v. Control Data Corp.*, 603 F.2d 724, 732 (8th Cir. 1979); *Genzer v. Cunningham*,

498 F.Supp. 682 (E.D.Mich.1980); *Maldonado v. Flynn*, 485 F.Supp. 274, 281–82 (S.D.N. Y.1980), *rev'd on other grounds*, 671 F.2d 729, 730 (2d Cir. 1982). The reasoning of these courts was particularly well stated by Judge Weinfeld in *Maldonado* in holding that a similar application of the business judgment rule does not offend the policies underlying section 14(a) of the Act:

> it is clear that the rule does not infringe directly upon the protections accorded investors by the regulatory scheme of section 14(a). It does not condone conduct violative of that section. Further, it may be noted that protection of investors is also a fundamental purpose of the Investment Company Act. Indeed that Act contains a provision concerned with proxies analogous to section 14(a). In *Burks*, as noted, the Court strongly indicated that a rule such as the one involved here was consistent with the Investment Company Act. Thus, an underlying policy of investor protection was not regarded as necessarily inconsistent with the business judgment rule in appropriate circumstances.

We find Judge Weinfeld's comments equally applicable to section 10(b).

### III

Our final consideration involves a review of the district court's decision. Abramowitz's demand on NVF was refused by unanimous decision of the board, with the defendant directors not voting. Under *Zapata* the district court's inquiry should therefore have been limited to whether the board's refusal passed muster under the business judgment rule—that is, whether the directors acted independently and in good faith in rejecting Abramowitz's demand.

 Before we review the district court's findings, we briefly address several related points raised by Abramowitz and by the SEC as amicus. First, Abramowitz asserts that Judge Haight incorrectly required her

---

**9.** Indeed, this case was based primarily on im- proprieties uncovered by an SEC investigation.

to make a demand upon the NVF board. She therefore urges us to treat this case as the functional equivalent of a futility case and therefore to apply the two-step test enunciated in *Zapata*. We see no reason here to decide whether the Delaware two-step test may properly be applied to a demand case because we cannot say that Judge Haight erred in requiring that demand be made.[10] We have held that " 'where the directors and controlling shareholders are antagonistic, adversely interested, or involved in the transaction attacked, a demand on them is presumptively futile and need not be made.' " *Elfenbein v. Gulf & Western Industries, Inc.*, 590 F.2d 445, 450 (2d Cir. 1978) (quoting *Cathedral Estates v. Taft Realty Corp.*, 228 F.2d 85, 88 (2d Cir. 1955)). *See* Note, *The Demand and Standing Requirements in Stockholder Derivative Actions*, 44 U.Chi.L.Rev. 168, 173–82 (1976). In *Zapata*, for example, all the directors were named as defendants. Certainly, it would be fair to say that the directors in such a case were at the very least "involved in the transaction attacked." In the present case, however, only five of the seventeen NVF directors were named as defendants. Further, as Judge Haight pointed out, the defendants here began to cooperate with the SEC well before Abramowitz filed her complaint, agreeing to entry of a final judgment in the SEC action which included both monetary and injunctive relief. The final judgment also called for the addition of the two independent directors to NVF's board, and established an independent committee whose responsibilities included reviewing the improprieties which in large part serve as the subject matter of this action. Under these circumstances, we find it far from "inevitable" that Abramowitz's demand would be refused. *See Elfenbein v. Gulf & Western Industries, Inc.*, 590 F.2d at 451. Accordingly, we hold that the district court did not abuse its discretion in requiring Abramowitz to make a demand.

In addition, the SEC urges us to apply the second tier of *Zapata*'s two-step test—that is, an objective scrutiny by the court as to whether dismissal is proper—to demand as well as to futility cases. Such a requirement, the SEC asserts, would advance the federal interest in investor protection. While we do not deny that Delaware has chosen a stricter test for futility cases, we believe that the SEC has misperceived our function as a reviewing court. We are not a legislative body free to rewrite Delaware law in order to advance federal policy. Rather, our function under *Burks v. Lasker* is simply to apply applicable state law as it exists, provided that it does not offend relevant federal policy, a matter we have already addressed in Section II above.

We find no error in Judge Haight's conclusion that the rejection by NVF's disinterested directors of Abramowitz's Rule 23.1 demand merits protection under the business judgment rule. As we stated in *Galef v. Alexander*, 615 F.2d 51, 57 (2d Cir. 1980), the rule "bars judicial inquiry into actions of directors taken in good faith and in honest pursuit of the legitimate purposes of the corporation." *See Gimbel v. Signal Companies, Inc.*, 316 A.2d 599, 608–09 (Del. Ch.), *aff'd*, 316 A.2d 619 (Del.1974). And it has long been settled that "[w]hether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management . . . ." *United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 263, 37 S.Ct. 509, 510, 61 L.Ed. 1119 (1917); *Rosengarten v. International Telephone & Telegraph Corp.*, 466 F.Supp. 817, 822 (S.D.N.Y.1979); *Gall v. Exxon Corp.*, 418 F.Supp. 508, 515 (S.D.N.Y. 1976). Provided that the decision of the NVF directors to reject Abramowitz's demand was reached independently and in good faith, that decision will not be disturbed by this Court. *See Zapata Corp. v. Maldonado*, 430 A.2d at 784 & n.10; Note, *Demand on Directors and Shareholders as a*

---

**10.** We recognize that were a district court to require a demand in a futile situation, the policies underlying the distinction in Delaware law

between demand and futility cases might well be undercut.

*Prerequisite to a Derivative Suit,* 73 Harv. L.Rev. 746, 759–60 (1960). Moreover, we are bound to affirm Judge Haight's finding of good faith and independence absent a showing that his conclusions are "clearly erroneous." Fed.R.Civ.P. 52(a).

As we noted earlier, Abramowitz has never sought discovery as to the good faith or independence of the board members who rejected her demand. Her contention that these directors are mere pawns controlled by the whim of the defendants is without evidentiary support. Further, her allegations overlook the credentials and integrity of the independent directors who authored the Audit Committee Report which recommended that NVF avoid further litigation. Indeed, these men were appointed to the Committee with the imprimatur of the SEC. Further, the SEC made no objection to the report after its public filing or to the manner in which the Committee reached its conclusions.[11]

Abramowitz's sole factual basis for challenging the good faith and independence of the NVF Board is that the Posner defendants would own approximately 40.6 percent of NVF upon conversion of all outstanding stock options they own. Yet Abramowitz concedes that the defendants did not vote on her demand. Without some showing that those directors actually voting on her demand were controlled by the defendants or profited from the improprieties attacked in this action, we have no basis to hold that the rejection of her demand was wrongful, and certainly no basis to find Judge Haight's factual determinations clearly erroneous. *See Issner v. Aldrich,* 254 F.Supp. 696, 700–01 (D.Del.1966); Note, *The Demand and Standing Requirements in Stockholder Derivative Actions, supra,* 44 U.Chi. L.Rev. at 193–98.

The decision of the district court is affirmed.

11. We agree with Judge Haight, *see* 513 F.Supp. at 133 n.13, that even assuming the disqualification of all other NVF directors, the affirmative vote of the two independent directors appointed to the Audit Committee following entry of the Final Judgment in the SEC action would be sufficient under Delaware law to support the resolution rejecting Abramowitz's demand. Del.Gen.Corp.Law §§ 141(b), 144.