**Slip Op. 00-157**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                        :
TRANSCOM, Inc.,                         :
                                        :
          Plaintiff,                    :
                                        :
L & S BEARING COMPANY,                  :
                                        :
          Plaintiff-Intervenor,         :
                                        :
          v.                            :   Court No. 97-02-00249
                                        :
THE UNITED STATES,                      :
                                        :
          Defendant,                    :
                                        :
THE TIMKEN COMPANY,                     :
                                        :
          Defendant-Intervenor.         :
                                        :
_____ :

     Plaintiff Transcom, Inc. ("Transcom") moves pursuant to USCIT
R. 56.2 for judgment upon the agency record challenging various
aspects of the United States Department of Commerce, International
Trade Administration's ("Commerce") final determination, entitled
Final Results and Partial Termination of Antidumping Duty
Administrative Review on Tapered Roller Bearings and Parts Thereof,
Finished and Unfinished, From the People's Republic of China
("Final Results"), 62 Fed. Reg. 6173 (Feb. 11, 1997).  Transcom
alleges that Commerce unlawfully subjected merchandise imported by
Transcom through exporters not properly designated in Commerce's
notice of initiation of an antidumping review to certain
determinations Commerce made as a result of the review.

     **Held:** Transom's USCIT R. 56.2 motion is granted.  This case is
remanded to Commerce to liquidate Transcom's relevant entries at a
rate equal to the cash deposit required on the merchandise at the
time of entry pursuant to 19 C.F.R. § 353.22(e) (1995).

[Transcom's motion is granted.  Case remanded].

Dated: November 22, 2000

Neville, Peterson & Williams (George W. Thompson, John M. Peterson and Curtis W. Knauss) for plaintiff.

Cohen Darnell & Cohen, P.L.L.C. (Mark A. Cohen) for plaintiff-intervenor.[1]

David W. Ogden, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Henry R. Felix); of counsel: Mildred E. Steward, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for defendant.

Stewart and Stewart (Terence P. Stewart, James R. Cannon, Jr., Amy S. Dwyer, Geert De Prest and Mara M. Burr) for defendant-intervenor.


                                   **OPINION**

**TSOUCALAS, Senior Judge:**       Plaintiff Transcom, Inc. ("Transcom") moves pursuant to USCIT R. 56.2 for judgment upon the agency record challenging various aspects of the United States Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled Final Results and Partial Termination of Antidumping Duty Administrative Review on Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China ("Final Results"), 62 Fed. Reg. 6173 (Feb. 11, 1997).  Transcom alleges that Commerce unlawfully subjected merchandise imported by Transcom through exporters not

---

[1] L & S Bearing Company has intervened in this action but did not file a motion for judgment upon the agency record and supporting brief.

properly designated in Commerce's notice of initiation of an antidumping review to certain determinations Commerce made as a result of the review.


## BACKGROUND

This case concerns the eighth administrative review of the antidumping duty order on tapered roller bearings ("TRBs") and parts thereof, finished and unfinished, imported from the People's Republic of China ("PRC") during the period of review ("POR") covering June 1, 1994, through May 31, 1995. Commerce reviewed and published the preliminary results on August 5, 1996. See Preliminary Results of Antidumping Administrative Review and Intent To Revoke Antidumping Duty Order in Part on Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China ("Preliminary Results"), 61 Fed. Reg. 40,610. On February 11, 1997, Commerce published the Final Results. See 62 Fed. Reg. 6173.

Since the administrative review at issue was initiated after December 31, 1994, the applicable law is the antidumping statute as amended by the Uruguay Round Agreements Act ("URAA"), Pub. L. No. 103-465, 108 Stat. 4809 (1994) (effective Jan. 1, 1995). See Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed. Cir. 1995) (citing URAA § 291(a)(2), (b) (noting effective date of URAA

amendments)).

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1994).

**STANDARD OF REVIEW**

The Court will uphold Commerce's final determination in an antidumping administrative review unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994); see NTN Bearing Corp. of America v. United States, 24 CIT ___, ___, 104 F. Supp. 2d 110, 115-16 (2000) (detailing Court's standard of review for antidumping proceedings).

**DISCUSSION**

**I.   Insufficient Notice**

  **A. Background**

This case concerns Commerce's procedure for conducting an administrative review and imposing antidumping duties. The procedure involves four steps: (1) Commerce publishes a notice of Opportunity to Request an Administrative Review for the POR at issue; (2) upon receipt of such request, Commerce publishes a notice of Initiation of an Administrative Review in the Federal

Register; (3) Commerce, in order to obtain pertinent information, distributes or makes available questionnaires to those entities Commerce designated in the notice of Initiation; and (4) on the basis of the information gathered, Commerce determines the antidumping duty rates applicable to each entry or type of entries and publishes these determinations in the Federal Register.  See generally, 19 U.S.C. § 1675(a)(1994); 19 C.F.R. §§ 353.22, 353.31 (1995).  If after the publication of a notice of Opportunity to Request an Administrative Review for the POR at issue, Commerce does not receive a timely or proper request for review, Commerce must "without additional notice . . . assess antidumping duties on the merchandise . . . at rates equal to the cash deposit of . . . estimated antidumping duties required on that merchandise at the time of entry . . . ."  19 C.F.R. § 353.22(e).

In this case, Commerce issued the antidumping duty order on May 27, 1987, and amended the order on February 26, 1990.  See Final Determination of Sales at Less Than Fair Value on Tapered Roller Bearings From the People's Republic of China, 52 Fed. Reg. 19,748; Amendment to Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order in Accordance With Decision Upon Remand on Tapered Roller Bearings From the People's Republic of China, 55 Fed. Reg. 6669.

On June 6, 1995, Commerce published in the Federal Register a

notice of Opportunity to Request an Administrative Review of the order covering the POR from June 1, 1994, through May 31, 1995. See Opportunity to Request Administrative Review of Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation, 60 Fed. Reg. 29,821. In response, The Timken Company ("Timken"), a United States producer of the subject merchandise, filed a request for review identifying by name 132 Chinese producers and exporters and nine Hong Kong exporters of the subject merchandise. See Def.'s Mem. Opp'n Pl.'s Mot. J. Agency R. ("Def.'s Mem.") at 4-5 (citing to P.D. 3; Fi. 3, Fr. 1, 3-13). Timken's list of 132 Chinese and nine Hong Kong entities did not include Direct Source International and Goldhill International Trading & Services Co. (collectively "Transcom's Hong Kong exporters"), entities that were Hong Kong nationals exporting TRBs from the PRC for Transcom, a United States importer. See id. at 8. Timken also requested a review of: (a) "all merchandise covered by the [antidumping duty] order, from whatever source"; and (b) merchandise from "any other exporter from Hong Kong or any other third country, . . . any other exporters or producers, wherever located, [that were] presently or previously part of or includ[ed] within their names 'China National Machinery Import and Export Corporation' or . . . 'Machinery Import and Export Corporation.'" See id. at 4-5.

On August 16, 1995, Commerce initiated the administrative

review at issue by publishing a notice of Initiation. See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocation in Part ("Notice of Initiation"), 60 Fed. Reg. 42,500.[2] The Notice of Initiation listed by name the 132 Chinese producers and exporters and nine Hong Kong exporters identified in Timken's request for review and, right at the outset, expressly provided that Commerce was "not initiating an administrative review of any exporters and/or producers who were not named in [the] review request [submitted by Timken] because such exporters and/or producers were not specified as required . . . ." Id. at 42,500-01 (emphasis supplied). Simultaneously, the Notice of Initiation provided that "[a]ll exporters of TRBs from the People's Republic of China [were] conditionally covered by this review." Id. at 42,503 (emphasis supplied).

This combination of statements was a notable deviation from the language Commerce used in the notice of Initiation of the review immediately preceding the one at issue. In the notice of Initiation of the preceding review, Commerce stated, in a similar

---

[2] The regulation states that Commerce must publish "notice of 'Initiation of Antidumping Duty Administrative Review.'" 19 C.F.R. § 353.22(c)(1) (pattern of capitalization in original). Accordingly, any such notice is designated in this opinion as "notice of Initiation" except for the notice of Initiation at issue which is designated as Notice of Initiation.

fashion, that "[a]ll other exporters of tapered roller bearings [were] conditionally covered."  Initiation of Antidumping Duty Administrative Reviews and Request for Revocation in Part, 59 Fed. Reg. 43,537, 43,539 (Aug. 24, 1994).  The preceding notice of Initiation, however, was silent about whether Commerce intended to review the entries from any exporters and/or producers not named in the request for review.  The language indicating Commerce's intent to abstain from reviewing the entries from any exporters/producers unidentified or improperly identified in the request for review appeared for the first time in the Notice of Initiation at issue. See Notice of Initiation, 60 Fed. Reg. at 42,500-01.

After publication of the Notice of Initiation, Commerce distributed questionnaires to the respondents named in the Notice of Initiation.  See Preliminary Results, 61 Fed. Reg. at 40,610. Commerce also made the questionnaires available for those parties that were not identified by name in the Notice of Initiation but who wished to submit required information in order to prevent a possible negative default determination.  See id.; cf. Preliminary Results of Antidumping Administrative Review on Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China, 60 Fed. Reg. 49,572, 49,573-76 (Sept. 26, 1995) (discussing the case of Xiangfan International Trade Corp.);  Transcom v. United States ("Transcom CIT"), 24 CIT ___,

___, Slip op. 00-146 at 12, 31 (Nov. 7, 2000).

Unaware of the existence of Transcom's Hong Kong exporters, Commerce did not provide them with the questionnaires, and Transcom's Hong Kong exporters and their PRC suppliers did not submit the questionnaires on their own.  See Def.'s Mem. at 8; Pl.'s Br. Supp. Mot. J. Agency R. ("Pl.'s Br.") at 7.

After the period to submit the questionnaires expired, Commerce reviewed the information it had obtained and published the Preliminary Results.  See 61 Fed. Reg. 40,610.  The Preliminary Results released the rates allocated to the entries from the entities that provided Commerce with the information meriting the assignment of separate rates.  See id. at 40,611-12.  The Preliminary Results also indicated that those companies that did not respond to the questionnaires or responded in an insufficient way would not merit separate rates and, thus, would be subject to the default PRC rate.  See id. at 40,613-14.

On August 23, 1996, Transcom entered its notice of appearance, arguing that Commerce's application of the default PRC rate was invalid with respect to the entries of those entities that abstained from responding to the questionnaires because they were not properly designated in the Notice of Initiation and, thus, not notified of the pending review.  See Final Results, 62 Fed. Reg.

6186-87; Def.'s Mem. at 8 (citing to P.D. 166, Fi. 46, Fr. 53).

In the Final Results, Commerce refuted Transcom's argument and indicated that Transcom's entries from its Hong Kong exporters would be subject to the review and the PRC default rate. See 62 Fed. Reg. at 6187-88. Consequently, Transcom initiated the current proceedings and filed a brief before this Court identifying its Hong Kong exporters by name. See Def.'s Mem. at 8.

### B.    Contentions of the Parties

Transcom contends that under 19 U.S.C. § 1675(a) and 19 C.F.R. § 353.22, Commerce lacked authority to review and impose the resulting determinations upon entries of any entities other than those properly designated in the Notice of Initiation. See Pl.'s Br. at 13-20. Specifically, Transcom asserts that the language of 19 U.S.C. § 1675(a) and 19 C.F.R. § 353.22, as interpreted by case law and read in conjunction with Commerce's express statement that Commerce was "not initiating an administrative review of any exporters and/or producers who were not [properly] named in [the] review request," precludes Commerce from reviewing and imposing the default PRC rate upon the entries of entities other than those properly designated in Timken's request for review. See id.

Commerce argues that it was obligated to provide notice only to "respondents" determinable under the "first to know test," here,

the PRC suppliers to Transcom's Hong Kong exporters.  See Def.'s
Mem. at 15-21.  Alternatively, Commerce maintains that it provided
Transcom and its Hong Kong exporters with constructive notice by
including the statement that "[a]ll exporters of TRBs from the
People's Republic of China [were] conditionally covered by this
review" in the Notice of Initiation.  See id. at 48.

Timken agrees with Commerce that Transcom's entries were
subject to the determinations Commerce made in its Final Results
because the statement "[a]ll exporters of TRBs from the People's
Republic of China are conditionally covered by this review"
provided Transcom and its Hong Kong exporters with constructive
notice of the pending review.  See Timken's Resp. Opp'n Pl.'s Mot.
J. Agency R. ("Timken's Resp.") at 12-14.  In addition, Timken
alleges that Transcom's challenge to the Preliminary Results
indicates Transcom's awareness of the fact that its entries were
subject to the review and constitutes Transcom's de facto admission
of being on notice.  See id. at 14.

### C.   Analysis

#### 1.   Commerce's Obligation to Notify

Commerce argues that under the "first to know test," Commerce
was obligated to notify only the PRC suppliers to Transcom's Hong
Kong exporters.  See Def.'s Mem. at 15-21.  The Court addressed

this issue in <u>Transcom CIT</u> and held that Commerce's assertion was contrary to the applicable statute, regulation and case law.[3] <u>See</u> 24 CIT ___, ___, Slip op. 00-146 at 18-21 (relying on 19 U.S.C. § 1675(a); 19 C.F.R. § 353.22(c) (1994); <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984) ; <u>Transcom, Inc. v. United States</u> ("<u>Transcom CAFC</u>"), 182 F.3d 876 (Fed. Cir. 1999)). Since the issue and the arguments presented in the instant case are identical to those in <u>Transcom CIT</u>, the Court adheres to its reasoning in <u>Transcom CIT</u>. Accordingly, the Court finds that Commerce was obligated to adequately notify all parties whose interests could be affected by the administrative review. <u>See</u> <u>Transcom CAFC</u>, 182 F.3d at 882-84; <u>Transcom CIT</u>, 24 CIT ___, ___, Slip op. 00-146 at 18-21.

### 2. Insufficiency of Notice Ensuing From the Language of the <u>Notice of Initiation</u>

A request for an administrative review must be submitted by an interested party. <u>See</u> 19 C.F.R. § 353.22(a). The term "interested party" includes "[a] producer in the United States of the like product . . . ." 19 C.F.R. § 353.2(k)(3) (1995). In the instant case, Timken is the interested party. Timken's request for the administrative review: (a) catalogued the names of 132 Chinese

---

[3] Although <u>Transcom CIT</u> was a pre-URAA case and the instant case is post-URAA, the outcome does not change as a result of the amendments.

producers and exporters and nine Hong Kong exporters; (b) identified a somewhat amorphous class of "other exporters or producers, wherever located, [that were] presently or previously part of or includ[ed] within their names 'China National Machinery Import and Export Corporation' or . . . 'Machinery Import and Export Corporation'"; and (c) designated a general category of those entities whose entries were "merchandise covered by the order, from whatever source." See Def. Br. at 4-5 (citing P.D. 3; Fi. 3; Fr. 1-13).

The interested party, however, may request an administrative review of only "specified individual producers or resellers . . . ." 19 C.F.R. § 353.22(a) (emphasis supplied). The phrase "specified individual producers or resellers" is interpreted by case law to mean that, in making a request for a review, the interested party should exhaust all avenues reasonably available in its attempts to specifically identify the entities to be reviewed before designating a general category of entities. See 19 C.F.R. § 353.22(a); Floral Trade Council v. United States, 17 CIT 1417, 1418 (1993). There is no evidence showing that Timken exhausted all avenues reasonably available to it. Consequently, Timken's identification of those entities whose entries were "merchandise covered by the order, from whatever source" was an invalid designation of a general category. See Floral Trade Council, 17

CIT at 1417, 1419 (holding that an interested party could not request a review of the entire Columbian industry, leaving to Commerce the task of gathering the names of all relevant producers and exporters). The language of Timken's request had to be read without this invalid designation. See 19 C.F.R. § 353.22(a); accord Notice of Initiation, 60 Fed. Reg. at 42,500-01. It follows that Commerce, as long as it was proceeding upon Timken's request, had the authority to review either the 132 Chinese producers/exporters and nine Hong Kong exporters listed by Timken (collectively "132 and nine companies") or, possibly, the 132 and nine companies plus all "other exporters or producers, wherever located, [that were] presently or previously part of or includ[ed] within their names 'China National Machinery Import and Export Corporation' or . . . 'Machinery Import and Export Corporation'" (collectively "132 and nine companies plus a certain class").[4]

_____

[4] A requesting interested party "must bear the . . . burden imposed on it by the regulation to name names" of the entities to be reviewed. Floral Trade Council, 17 CIT at 1418-19. However, "the burdens on the requester are those caused by the mechanics of triggering the review that is actually desired. In practical terms, these burdens should be minimal." Id. at 1418. In other words, a requesting interested party could probably satisfy its burden to "name names" by providing an encompassing term specifically identifying a precise and limited class, so the designation would be more analogous to "naming names" than to vaguely outlining a general category of entities. See 19 C.F.R. § 353.22(a); Floral Trade Council, 17 CIT at 1418-19. The Court, however, does not need to reach this issue in the instant case because, as it is discussed below, the outcome remains the same regardless of whether or not Timken validly requested the review of
(continued...)

Commerce must designate in its notice of Initiation those entities whose interest in entries of merchandise might be affected by the review in order to subject these entries to Commerce's determinations. See generally, 19 C.F.R. §§ 353.22(a), 353.29(a) (1995). The designation in a notice of Initiation provides these entities with notice of pending review and enables them to participate meaningfully. See 19 U.S.C. § 1675(a); 19 C.F.R. § 353.22(a); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950); Transcom CAFC, 182 F.3d at 881-84; Transcom CIT, 24 CIT ___, ___, Slip op. 00-146 at 24-25. Commerce's failure to provide adequate notice is a violation of Commerce's statutory and regulatory obligations that makes the resulting determinations procedurally defective and inoperative with regard to the entries of those entities that did not receive adequate notice. See Transcom CAFC, 182 F.3d at 880, 884; see generally, Mullane, 339 U.S. 306. In the instant case, as discussed below, the scope-limiting statement that Commerce was "not initiating an administrative review of any exporters and/or producers who were not [properly] named in [the] review request" submitted by Timken superceded the scope-enlarging statement that "[a]ll exporters of

---

[4](...continued)
"other exporters or producers, wherever located, [that were] presently or previously part of or includ[ed] within their names 'China National Machinery Import and Export Corporation' or . . . 'Machinery Import and Export Corporation.'"

TRBs from the People's Republic of China [were] conditionally covered." The scope-limiting statement stripped Transcom of its right to notice of the review, thus, making the determinations in the Final Results inoperative with regard to Transcom's entries from its Hong Kong exporters.

If Commerce reviews entries of merchandise from a non-market economy, it can satisfy the notice requirement by designating the entities in a notice of Initiation either by name or by a defining phrase that is "reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314 (citations omitted); see Transcom CAFC, 182 F.3d at 881-82; Transcom CIT, 24 CIT ___, ___, Slip op. 00-146 at 23-32. The phrase "[a]ll exporters of TRBs from the People's Republic of China [were] conditionally covered by this review," included in the Notice of Initiation, was a defining phrase that, under the circumstances, satisfied the notice requirement by reasonably alerting the entities to the pendency of the review. See Transcom CAFC, 182 F.3d at 881-82; Transcom CIT, 24 CIT ___, ___, Slip op. 00-146 at 23-32. The phrase implies that the scope of the review could be enlarged to encompass any entity that Commerce itself could make subject to the review in addition to the entities properly designated in the request for review by the interested

party.  <u>See generally</u>, <u>Transcom CAFC</u>, 182 F.3d at 880, 883; <u>Transcom CIT</u>, 24 CIT ___, ___, Slip op. 00-146 at 21-23; Def.'s Mem. at 48.

The <u>Notice of Initiation</u> also included a scope-limiting statement that Commerce was "not initiating an administrative review of any exporters and/or producers who were not [properly] named in [the] review request" by Timken.  <u>Notice of Initiation</u>, 60 Fed. Reg. at 42,500-01.  Two alternative meanings could have been inferred from this statement: (1) Commerce expressly limited its right of review to only the "132 and nine companies"; or (2) Commerce expressly limited its right of review to only the "132 and nine companies plus a certain class."  In sum, the scope-limiting statement that Commerce was "not initiating an administrative review of any exporters and/or producers who were not named in [the] review request" by Timken potentially conflicted with the implied meaning of Commerce's scope-enlarging statement that "[a]ll exporters of TRBs from the People's Republic of China [were] conditionally covered by this review."  <u>Id.</u> at 42,500-01, 42,503.

While the particular circumstances of this case might allow an

interpretation harmonizing these incompatible statements,[5] the outcome remains the same: the notice provided by Commerce was procedurally insufficient with regard to Transcom's entries from its Hong Kong exporters.

The Court believes that Commerce's statement that "[a]ll exporters of TRBs from the People's Republic of China are conditionally covered" signified Commerce's desire to enlarge the scope of the review to encompass entities other than those properly

_____

[5] It can be fancied that the reason for Commerce's statement that "[a]ll exporters of TRBs from the People's Republic of China [were] conditionally covered" was not a desire to enlarge the scope of the review to encompass the entities other than those properly designated in Timken's request but rather a desire to validate Timken's usage of the questionable encompassing term "exporters or producers, . . . [that were] presently or previously part of or includ[ed] within their names 'China National Machinery Import and Export Corporation' or . . . 'Machinery Import and Export Corporation.'" Such interpretation allows a harmonized reading of the statements that: (1) Commerce was "not initiating an administrative review of any exporters and/or producers who were not named in [the] review request" and (2) Commerce deemed "[a]ll exporters of TRBs from the People's Republic of China [to be] conditionally covered" by the review. In that case, the scope-limiting statement that Commerce was "not initiating an administrative review of any exporters and/or producers who were not named in [the] review request" narrows the scope of the review to the "132 and nine companies plus a certain class." Granting that, the entries from Transcom's Hong Kong exporters would be excluded from the scope of the review because Transcom's Hong Kong exporters were neither listed among the "132 and nine companies" nor presently or previously part of or included within their names the term "China National Machinery Import and Export Corporation" or "Machinery Import and Export Corporation." Thus, under this interpretation, the aggregated language of the Notice of Initiation could not amount to adequate notice that Transcom's entries from its Hong Kong exporters were subject to the review. See Transcom CAFC, 182 F.3d at 883-84.

designated in Timken's request, that is, entities neither on the list of "132 and nine companies" nor on "132 and nine companies plus a certain class." See Transcom CAFC, 182 F.3d at 882; Transcom CIT, 24 CIT ___, ___, Slip op. 00-146 at 24, 31-32; Def.'s Mem. at 48. This scope-enlarging statement, therefore, was in conflict with Commerce's scope-limiting statement that Commerce was "not initiating an administrative review of any exporters and/or producers who were not [properly] named in [the] review request" submitted by Timken.

Between two incompatible agency statements, as with conflicting statutory authorities, the more specific one must prevail. Cf. Smith v. Berry Co., 198 F.3d 150, 152 (5th Cir. 1999) (holding that among two conflicting statutes, the more specific statute prevails over the more general one); see Kinney v. Yerusalim, 812 F. Supp. 547, 550 (E.D. Penn. 1993) (finding that the more specific agency regulation supersedes the more general provision). The degrees of specificity of the two statements at issue are different. The statement that Commerce was "not initiating an administrative review of any exporters and/or producers who were not [properly] named in [the] review request" was a narrowly-tailored concrete declaration. It provided that any party not included on the list of "132 and nine companies" (or "132 and nine companies plus a certain class") had no reason to be

concerned about the outcome of the review. Considering the ambiguities inherently associated with descriptive language, one can hardly make a statement more specific than a list of names.[6] See e.g., Ayala v. United States, 980 F.2d 1342, 1344 (10th Cir. 1992); Issner v. Aldrich, 254 F. Supp. 696 (D. De. 1966); cf. S. REP. No. 95-1071 (1978), reprinted in 1978 U.S.C.C.A.N. 2676, 2705 (noting that a list of names amounts to a precise statement). By the same token, when Commerce expressly omitted Transcom's Hong Kong exporters in its list of "132 and nine companies" (or "132 and nine companies plus a certain class"), it could hardly make a more precise statement.

Conversely, Commerce's descriptive statement that "[a]ll exporters of TRBs from the People's Republic of China [were] conditionally covered" was intended to be a general, broader statement subjecting the entries from indefinite entities Commerce

---

[6] Assuming that Timken's request for review was only valid with regard to "132 and nine companies," the list of these very same entities was actually spelled out in the Notice of Initiation and constituted a specific statement. See 60 Fed. Reg. 42,501-03. The effect would be the same if Commerce's review encompassed "132 and nine companies plus a certain class." The mere fact that the terms "China National Machinery Import and Export Corporation" or "Machinery Import and Export Corporation" provided by Timken were not recited in the Notice of Initiation changed nothing: the content of Timken's review request, a public document, was available and known to any entity in the industry and could have been read into the Notice of Initiation through Commerce's statement that "[a]ll exporters of TRBs from the People's Republic of China are conditionally covered". See Def.'s Mem. at 4, n.3; see also supra note 5.

was unable to designate specifically to the scope of the review.[7]
See Def.'s Mem. at 48; Timken's Resp. at 10-11; Transcom CAFC, 182
F.3d 882-83; Transcom CIT, 24 CIT ___, ___, Slip op. 00-146 at 31
(citing to Def.'s Mem. Opp'n Pl.'s Mot. J. Agency R. at 43,
Transcom CIT, 24 CIT ___, ___, Slip op. 00-146).

Consequently, the statement that Commerce was "not initiating
an administrative review of any exporters and/or producers who were
not [properly] named in [the] review request" was a more specific
declaration than the statement that "[a]ll exporters of TRBs from
the People's Republic of China [were] conditionally covered."  The
former statement controlled the latter one and justified Transcom's
reasonable reliance.  See Kinney, 812 F. Supp. at 550.

Furthermore, the sum of the conflicting statements constituted
a notable deviation from the language Commerce used in its previous
notices.  Except for the notice of Initiation directly preceding
that at issue, all of Commerce's previous notices of Initiation did
not include any language either enlarging or limiting the scope of
relevant reviews.  See Transcom CAFC, 182 F.3d at 882.  The notice

---

[7] "Definitions necessarily are imprecise and ambiguous because they attempt to represent complex concepts and myriad factual scenarios using the imprecise medium of language.  Imprecision and ambiguity are particularly common when . . . the concept underlying the definition is both non-observable and qualitative in nature." Kevin H. Smith, Disabilities, Law Schools, and Law Students: A Proactive and Holistic Approach, 32 AKRON L. REV. 1, 38 (1999).

of Initiation directly preceding that at issue included no scope-limiting language, it only provided that "[a]ll other exporters of tapered roller bearings [were] conditionally covered . . . ." Initiation of Antidumping Duty Administrative Reviews and Request for Revocation in Part, 59 Fed. Reg. at 43,539. This statement was apparently included by Commerce to alert the industry to an enlargement of the scope of Commerce's review. See Transcom CIT, 24 CIT ___, ___, Slip op. 00-146 at 27-29.

It was reasonable for a member of regulated industry such as Transcom to assume that the inclusion of the new, scope-limiting language into the Notice of Initiation at issue manifested Commerce's intent to amend Commerce's prior policy, curtail the scope of the pending review and alert the industry accordingly. Cf. Chevron, 467 U.S. at 845 (explaining that an agency may choose to reconcile and foster inconsistent goals and policies).

Agency statements provide guidance to regulated industries. There is, however, a distinct difference between the measure of guidance (and the ensuing industry responsibilities) created by a narrowly paraphrased unambiguous statement and the measure of guidance provided by a statement that is broad, general and descriptive. An industry member is expected to contact its regulating agency and inquire if the industry member finds a general descriptive term ambiguous and in need of clarification.

See Transcom CIT, 24 CIT ___, ___, Slip op. 00-146 at 26-31.  An inquiry, however, is not expected if the statement the agency makes is a precise pronunciation based on statutes, regulations and case law.  Indeed, it would be anomalous to expect a member of the industry to inquire whether the agency is aware of the applicable statutes, regulations and pertinent case law, or whether the agency actually meant to make the unambiguous statement it made.  If, in addition to making an unambigious specific statement, the agency makes a conflicting general statement, it has nobody to blame but itself for the resulting confusion.  Cf. ITT World Communications, Inc. v. FCC, 725 F.2d 732, 754 (D.C. Cir. 1984) ("[A]n agency does not act rationally when it chooses and implements one policy and decides to consider the merits of a potentially inconsistent policy in the very near future."); Hamlin v. Hamlin, 192 N.Y. 164, 168 (1908) (holding that a statement in a pronunciation by a tribunal inconsistent with another statement in the same pronunciation allows the affected party to rely in good faith upon the statement more favorable to the party's contentions).

To summarize, the statement that Commerce was "not initiating an administrative review of any exporters and/or producers who were not [properly] named in [the] review request" gave each member of the industry constructive notice and an implied promise that his entries would be excluded from the review and liquidated "at rates

equal to the cash deposit of . . . estimated antidumping duties required on that merchandise at the time of entry" under 19 C.F.R. § 353.22(e) if the industry member was not properly identified in Timken's request. The inclusion of the statement that "[a]ll other exporters of tapered roller bearings [were] conditionally covered" created an element of confusion but did not change the message ensuing from the aggregated language of the Notice of Initiation.

### 3. De Facto Admission of Being on Notice

Timken alleges that Transcom's challenge to Commerce's Preliminary Results[8] indicated that Transcom was aware that its entries could be subject to the review. See Timken Br. at 14. The Court disagrees.

According to its own regulation, Commerce must publish its preliminary results together with an "invitation for argument." See 19 C.F.R. § 353.22(c)(5). The invitation for argument allows "any interested party or U.S. Government agency [to] submit a 'case brief'" contesting Commerce's preliminary results and to "present in full all arguments that[,] in the submitter's view [, are]

---

[8] Transcom entered its notice of appearance, arguing that Commerce's application of the default PRC rate was invalid with respect to the entries from those entities that abstained from responding to the questionnaires because they were not properly designated in the Notice of Initiation and, thus, not notified of the pending review. See Final Results, 62 Fed. Reg. 6186-87.

relevant to [Commerce's] final determination or final results . .

. ."   19 C.F.R. § 353.38(c)(1),(2) (1995) (emphasis supplied);

accord Preliminary Results, 61 Fed. Reg. at 40,615.  Nothing in the

language of 19 C.F.R. § 353.38(c) requires the "interested party"

to be an entity negatively affected by Commerce's final

determinations.  See generally, 19 C.F.R. § 353.38(c).  Moreover,

Commerce's own definition of "interested party" does not include

the requirement.  See 19 C.F.R. 353.2(k).[9]  Timken's interpretation

adds an element not contemplated by Commerce to the language of 19

C.F.R. §§ 353.2(k), 353.38(c) and effectively substitutes

Commerce's definitions with the implausible criterion based upon an

entity's predictions about negative determinations Commerce could

make in the future.

---

[9] According to Commerce's definition, the term [i]nterested party means: (1) [a] producer, exporter, or United States importer of the merchandise, or a trade or business association a majority of the members of which are importers of the merchandise; (2) [t]he government of the home market country; (3) [a] producer in the United States of the like product or seller (other than a retailer) in the United States of the like product produced in the United States; (4) [a] certified or recognized union or group of workers which is representative of the industry or of sellers (other than retailers) in the United States of the like product produced in the United States; (5) [a] trade or business association a majority of the members of which are producers in the United States of the like product or sellers (other than retailers) in the United States of the like product produced in the United States . . . .
19 C.F.R. § 353.2(k).

In addition, the inference of notice from the mere fact of an entity's comments to Commerce's preliminary results would have two undesirable effects: (1) it would defeat the goal of 19 C.F.R. § 353.38(c) that aims to encourage public participation in administrative process rather than to penalize participants; and (2) it would circumvent the notice requirements of 19 U.S.C. § 1675(a) and 19 C.F.R. § 353.22(c), both of which provide that a notice must be given at the outset of a review rather than inferred post factum from the entity's eventual comments.

An entity's good faith submission of a comment to Commerce's preliminary results made upon Commerce's own invitation should neither be interpreted as the entity's concession of being a party adversely affected by the determinations nor as an affirmation of being properly on notice. Holding otherwise would be as anomalous as stating that an amicus curiae admits being a properly served defendant if he files a brief with the leave of court.

## II.   Other Contentions

Other issues disputed by Transcom and Commerce include: (a) Commerce's right to subject Transcom's entries to the "best information available" ("BIA") rate resulting from the failure of Transcom's Hong Kong exporters to submit the information sought in Commerce's questionnaires; and (b) a violation of Transcom's Fifth

Amendment procedural Due Process rights resulting from Commerce's insufficient notice. See Pl.'s Br. at 28-37; Def.'s Mem. at 52-57.

None of these issues, however, needs to be reached by the Court because Commerce's notice failed the threshold issue of procedural sufficiency. Commerce, therefore, is barred from the imposition of the determinations made in the Final Results upon the entries from Transcom's Hong Kong exporters and from the application of the default BIA rate to these entries. See Transcom CAFC, 182 F.3d at 880-81 (stating that (a) "it would be inappropriate for the government to 'resort[ ] to BIA for companies which were not specifically listed in the [N]otice of [I]nitiation and not issued their own questionnaires,' since those parties would have had 'no actual or constructive notice'"; and (b) the court "need not address Transcom's argument that the lack of notice of the scope of the administrative reviews violated Transcom's rights under the due process clause of the Fifth Amendment to the Constitution, because . . . Commerce's conduct . . . violated Commerce's statutory and regulatory notice obligations in connection with the administrative reviews.")

**CONCLUSION**

For the foregoing reasons, the Court finds the notice provided by Commerce in the Notice of Initiation procedurally deficient with

regard to Transcom's entries from its Hong Kong exporters.  This case is remanded to Commerce to liquidate Transcom's relevant entries at a rate equal to the cash deposit required on the merchandise at the time of entry pursuant to 19 C.F.R. § 353.22(e).

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated:    November 22, 2000
          New York, New York